UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BRYAN FITZPATRICK,<br><br>Defendant. | CRIMINAL NO. 11-10018-RWZ |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States respectfully recommends that the Court sentence Bryan Fitzpatrick (the "defendant") to a 90-month term of imprisonment and three years of supervised release, and order him to pay restitution. A 90-month prison term is warranted because of the facts of this case, the defendant's serious criminal history, and the fact that he committed the instant robbery while on probation for having committed the same offense. Such a sentence is also fair and reasonable, given that the defendant qualifies as a career offender, which calls for a much longer term of imprisonment.

## BACKGROUND

On June 29, 2010, at approximately 4:57 PM, the defendant entered Sovereign Bank, located at 20 Beale Street in Quincy, Massachusetts (the "Bank"). The Bank is a federally insured financial institution. Without speaking, the defendant handed the teller a note that read, "No Dye Pack This is a Robbery." The teller hesitated, but then handed the man $1,020 in cash that was sitting on top of her cash drawer. The defendant took the money, counted it and left.

Quincy Police detectives retrieved photographs of the defendant from the Bank's surveillance system and posted them, among other places, on the website of the Patriot Ledger, the regional newspaper. The next day, June 30, 2010, the defendant's probation officer from Norfolk County contacted the Quincy Police Department and said that he believed the individual in the posted photographs was the defendant, who lived in Quincy and whose probation he had been supervising. Notably, the offense for which the defendant was on probation was unarmed robbery.

The detectives eventually located the defendant and arrested him without incident. At the time of arrest, the defendant was carrying a $50 bill in his hand. After booking, the defendant agreed to waive his rights and signed a Miranda waiver. Quincy Police detectives then conducted a recorded interview, during which the defendant admitted, among other things, that he committed the robbery of the Bank. The defendant explained that he spent the money he took from the Bank on drugs and personal bills. He further admitted that the $50.00 bill he had when he was arrested was one of the bills he took from the bank, and that the other bills that he had in his possession were remnants and change from the stolen cash.

On January 26, 2011, the defendant was named in a one-count indictment, which charged Unarmed Bank Robbery, in violation of 18 U.S.C. § 2113(a). The defendant was also named in a Forfeiture Allegation, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c). The defendant appeared before the Court and pleaded guilty to Count One of the Indictment on May 5, 2011.

**ARGUMENT**

The government recommends a 90-month prison term for the defendant. Now that the defendant has pleaded guilty, the Court must impose a sentence that is "sufficient, but not greater

than necessary" to achieve the purposes of sentencing.  18 U.S.C. § 3553(a).  In fashioning such a sentence, a Court must consider the factors provided by 18 U.S.C. § 3553(a).  Among the factors to be considered are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established; (5) any pertinent policy statements made by Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been guilty of similar conduct; and (7) the need to provide restitution to any victims.  18 U.S.C. § 3553(a).

Here, seven-and-a-half years is a fair and reasonable sentence, given the defendant's offense conduct, his criminal history, the fact that the he robbed a bank while on probation for the very same offense, and that he qualifies as a career offender under the United States Sentencing Guidelines (the "Guidelines").

**I.    THE DEFENDANT QUALIFIES AS A CAREER OFFENDER UNDER THE UNITED STATES SENTENCING GUIDELINES.**

When sentencing a defendant, the Court should begin with the calculation of the defendant's particular guideline sentencing range ("GSR").  *United States v. Martin*, 520 F.3d 87, 91 (1st Cir. 2008).  The defendant's GSR here is controlled by his career-offender status.  A defendant qualifies as a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.  USSG § 4B1.1(a).  The defendant was twenty-nine at the time he committed the instant offense.   Moreover, for purposes of the career offender guidelines, unarmed robbery qualifies as a "crime of violence".  USSG § 4B1.2(a)(2).  Lastly, the defendant

has at least two prior felony convictions of either a crime of violence or a controlled substance offense counted separately under the provisions of USSG. § 4A1.1(a), (b), or (c).  The first predicate offense is a 1998 felony conviction for manufacturing/distributing a Class D substance.  The second predicate offense(s) are 2008 felony convictions for unarmed robbery.  Thus, based on his career offender status, an increased offense level of 29, and a criminal history category of VI, the defendant's GSR is 151-188 months.[1]

Notwithstanding this GSR, the Court must consider additional factors when fashioning its sentence because the Guidelines are no longer mandatory.  *See, e.g.*, *United States v. Booker*, 543 U.S. 220, 245 (2005); *United States v. Dixon*, 449 F.3d 194, 203-04 (1st Cir. 2006).  Here, the additional sentencing factors demand a significant prison term, but one that varies below 151 months.

## II. THE NATURE OF THIS OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT COMMEND A SIGNIFICANT SENTENCE.

The defendant's conduct and his criminal history are deeply troubling.  The defendant walked into the Sovereign Bank, located at 20 Beale Street in Quincy, MA, handed a young female teller a threatening note that read, "No Dye Packs This is a Robbery," and took $1,020.  While the government recognizes that the defendant was unarmed when he committed the instant offense, this was nonetheless a serious crime that put the teller in fear and easily could have spun out of control.  It is the type of serious offense that merits serious punishment.

Moreover, the defendant has a lengthy and disturbing criminal history.  Among his convictions, the defendant was notably convicted in 1998 for manufacturing/distributing a Class

---

[1] The defendant's otherwise-applicable GSR would be determined based on the defendant's offense conduct and the defendant's criminal history. USSG § 1B1.1. The defendant's base offense level is 20. USSG § 2B3.1(a). The defendant receives a 2-level increase because the offense involved a bank. USSG § 2B3.1(b)(1). The defendant's total offense level, after a plea, is therefore a 19. Based on the defendant's criminal history, the defendant has a total of 19 criminal history points, which places the defendant in criminal history category VI. USSG § 4A1.1.

D substance, in 2005 for larceny over $250, in 2006 for assault and battery, in 2007 for assault and witness intimidation, and in 2008 for not one, <u>but two</u> unarmed robberies.[2] Indeed, the defendant qualifies for Career History Category VI independently from the career-offender provisions of the Guidelines.

### III. A 90-MONTH PRISON TERM WOULD PROMOTE DETERRENCE AND PROVIDE REHABILITATION OPPORTUNITIES FOR THE DEFENDANT.

This defendant desperately needs to receive a wake-up call. He was on probation for one of his 2008 convictions for unarmed robbery when he committed the very same offense here. Furthermore, despite many previous short terms of incarceration, the defendant has failed to turn away from a life of crime. In fact, the defendant has now committed three unarmed robberies within two years. A seven-and-a-half-year prison term is more than three times the length of time the defendant has ever been incarcerated. It is a sentence that would therefore not only generally deter the defendant from committing any future crimes, but from specifically committing more robberies. A 90-month sentence would also protect the public from any further crimes committed by the defendant.

At the same time, the defendant would be released from prison before the age of 40. Thus, such a sentence would give him a chance to reintegrate into society, but it would also leave a mark on his record that would likely lead to a severe sentence if the defendant were ever to slip up again.

Despite the defendant's serious criminal history and thus the need for the significant sentence, the government acknowledges the defendant's traumatic childhood and history of alcohol and substance abuse. While such facts do not excuse the defendant's continued course of

---

[2] The defendant was sentenced on the same day for both robberies, receiving committed time on the first and a term of probation to be served from and after the completion of his prison term. He was serving that term of probation when he committed this offense.

criminal conduct, they contribute to the government's recommendation that the Court vary from the career offender provisions of the Guidelines and impose a sentence well-below the defendant's GSR. A 90-month prison term would also provide the defendant with the opportunity to receive treatment while incarcerated. Hopefully, such treatment would prepare the defendant to succeed after his release.

**IV.   THE COURT SHOULD ORDER THE DEFENDANT TO SERVE THREE YEARS OF SUPREVISED RELEASE AND TO PAY RESTITUTION.**

Upon release, the government also recommends that the defendant be given the maximum length of supervised release of three years pursuant to 18 U.S.C. § 3583(b), the terms of which should include substance-abuse treatment. Furthermore, the government requests that the defendant be ordered to pay restitution in the amount of $1,020 to be paid to the Clerk of the United States District Court for the District of Massachusetts on behalf of Sovereign Bank.

**CONCLUSION**

The government respectfully recommends that the Court sentence the defendant to a 90-month term of imprisonment and three years of supervised release, in addition to ordering restitution. Notwithstanding the defendant's GSR of 151-188 months under the career offender guidelines, and Congress' intent in drafting the Guidelines, a 151-month prison term is probably excessive in this particular case. Notwithstanding that the government believes a variance is appropriate, a significant sentence is required. A term of seven-and-a-half years is a fair and reasonable sentence given that the defendant committed the robbery while on probation for committing the same offense two years earlier, and that the defendant has failed to turn away from a life of crime despite many previous short terms of incarceration. A 90-month prison term addresses the seriousness of the offense, serves to deter the defendant from committing any

future crimes, specifically that of unarmed robbery, and appropriately reflects the defendant's criminal history.

                                  Respectfully submitted,

                                  CARMEN M. ORTIZ
                                  United States Attorney

                    By:    /s/ Eric P. Christofferson
                                  ERIC P. CHRISTOFFERSON
                                  Assistant U.S. Attorney

Dated:  August 11, 2011

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                  /s/ Eric P. Christofferson
                                  ERIC P. CHRISTOFFERSON

Dated: August 11, 2011